# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

_____

CAROLYN CONDIT,

    Plaintiff,

v.                                                    No. CIV-O3-0862 BB/ACT-LFG

USA TODAY and GANNETT CO., INC.

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court for consideration of Defendants USA Today and Gannett Co., Inc.'s Motion to Dismiss, filed September 29, 2003 (Doc. 8) and supplemental briefs thereto. It presents the issue of whether the sales of over 13,000 newspapers per day in New Mexico, without more, is enough for New Mexico to exercise jurisdiction over the defendants where the claims do not arise out of those contacts. The Court has reviewed the submissions of the parties and the relevant law, and for the reasons set forth below, finds that it lacks personal jurisdiction over Defendants USA Today and Gannett Co., Inc. Accordingly, Defendants' motion will be GRANTED.

### I. BACKGROUND

Plaintiff Carolyn Condit ("Condit"), is a resident of California, and the wife of former United States Congressman Gary A. Condit. She brings this multi-state defamation suit in New Mexico against Defendants USA Today and Gannett Co., Inc. (collectively "Gannett"), both corporations with their principal place of business in Virginia. Condit claims that she was defamed by an article published by Gannett in the nationwide newspaper *The USA Today* on July

27, 2001. The article at issue centered on the disappearance of Chandra Levy, a former intern to Congressman Gary Condit. The relevant section stated:

> In other developments, The National Enquirer reported today that Condit's wife confronted Levy in a phone call days before the intern's disappearance. The tabloid said the clash occurred after Levy told Carolyn Condit that Gary Condit would be leaving her to start a new family with Levy.

According to Condit, the story is false and defamatory.

Condit brought this suit in the District of New Mexico, claiming that New Mexico is a proper venue because the article was published here. In their Motion to Dismiss, Gannett challenged this assertion, and argued that venue is improper because this Court lacks personal jurisdiction. This Court permitted a 60 day period of limited discovery on the jurisdictional and venue issues.

Following this limited discovery period, the parties submitted supplemental briefs that detailed the following contacts between Gannett and New Mexico. First, Condit offers no evidence that the allegedly libelous article was ever actually circulated in New Mexico. Gannett published at least two editions of the July 27, 2001 *USA Today*, and only the first edition was distributed in New Mexico. However, the allegedly defamatory material was contained exclusively in the second edition.

Nonetheless, Gannett distributes a numerically significant number of newspapers in New Mexico. Since 1996, over 13,000 copies a day of *USA Today* have been circulated in New Mexico. Pls. Supp. Brief, at Ex. 1, pg. 5-6 (April 8, 2004). In 2003 the daily circulation of *USA Today* was over 17,000 copies. *Id*. at 6. These newspapers are printed out of state, and trucked to distribution points in New Mexico. *Id*. at 5. In addition, another division of USA Today

2

publishes *Sports Weekly*, which from 1995 to 2000 had a weekly circulation of approximately 1,000 copies.  Pls. Supp. Brief, at Ex. 2, pg. 10.  Finally, a subsidiary of Gannett is involved in a limited partnership that publishes several newspapers in New Mexico.  Pls. Supp. Brief, at Ex. 2, pg. 3-9.

Notwithstanding the circulation of these newspapers within the state, Gannett is not qualified to do business in New Mexico, does not own property here, and does not have a registered agent.   Moreover, no evidence was presented that would suggest that Gannett paid taxes in New Mexico, has any employees in this state, or even has a New Mexico mailing address or telephone number.  In short, for the purposes of determining jurisdiction, the sole contact in the record between Gannett and New Mexico is the distribution of newspapers here.  It is on this basis alone that the Court must determine jurisdiction.

## II.  LEGAL STANDARD

In order to establish personal jurisdiction in a diversity case, a plaintiff must show both that jurisdiction is proper under the forum state's long-arm statute, and that the exercise of personal jurisdiction over the defendants does not offend the Due Process Clause of the United States Constitution.  *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).  New Mexico has interpreted its long arm statute liberally so as to allow jurisdiction to the full extent permitted by due process.  *See* N.M. Stat. Ann. § 38-1-16(A).  Therefore, "the usual two-step analysis collapses into a single search for the outer limits of what due process permits." *Martin v. First Interstate Bank of California*, 914 F.Supp. 473, 476 (D.N.M. 1995)(internal quotation omitted).  This analysis is guided by federal law.  *SGI Air Holdings II LLC v. Novartis International AG*, 239 F.Supp.2d 1161, 1163 (D. Colo. 2003).

Under the Due Process Clause the test for personal jurisdiction has two related inquiries: (1) the "minimum contacts" inquiry and (2) the "reasonableness" inquiry. First, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1979). "The minimum contacts standard may be met in one of two ways: (1) a court may exercise general jurisdiction if the defendant's contacts with the forum state are continuous and systematic; or (2) a court may exercise specific jurisdiction over a defendant if it purposefully directs activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001). The minimum contacts requirement "protects a defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit far from home in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar." *OMI Holdings, Inc. v. Royal Insurance Co. of Canada*, 149 F.3d 1086, 109o (10th Cir. 1998). Furthermore, "it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp.*, 444 U.S. at 292.

Second, if sufficient contacts exist with the defendant, courts must consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987). This inquiry "requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances

surrounding the case." *OMI Holdings, Inc.* 149 F.3d at 1091 (citing *Asahi*, 480 U.S. at 113); *see also Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996) (recognizing that the reasonableness prong applies to both specific and general jurisdiction).

Condit must, therefore, show that minimum contacts exist between Gannett and New Mexico through specific or general jurisdiction, and the exercise of jurisdiction over Gannett must be reasonable. Additionally, as the plaintiff, Condit "bears the burden of establishing personal jurisdiction over the defendant." *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). Even though the supplemental briefing was submitted in lieu of an evidentiary hearing, the requisite jurisdictional facts must be proven by a preponderance of the evidence. *See, e.g., Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001); *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

### III.  DISCUSSION

As discussed, this Court may exercise personal jurisdiction over Gannett only so long as there exist "minimum contacts" between Gannett and New Mexico, and the exercise of jurisdiction would be reasonable. For the reasons presented in more detail below, the Court finds that the contacts between Gannett and New Mexico are insufficient to exercise jurisdiction, and that in any event, the exercise of jurisdiction would not be reasonable.

**A.      Minimum Contacts**

The Due Process Clause protects an individual from being subjected to the judgments of a forum with which "he has established no meaningful 'contacts, ties, or relations.'" *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). As explained, Condit must, therefore, show that this Court possesses either specific or general jurisdiction over Gannett.

      **1.     Specific Jurisdiction**

Specific jurisdiction can be exercised over a foreign defendant when the lawsuit arises from or relates to the defendant's contacts with the forum state. *World- Wide Volkswagen Corp.*, 444 U.S. at 291-92. In her original motion, Condit claimed that specific jurisdiction existed because the allegedly defamatory article was published in New Mexico. However, Condit subsequently abandoned this claim in her supplemental brief. The evidence before the Court demonstrates that the allegedly defamatory material was contained exclusively in the second edition of the July 27, 2001 *USA Today*, and only the first edition was distributed in New Mexico. Thus, the case does not arise out of contacts between Gannett and New Mexico, and this Court can not exercise specific jurisdiction over Gannett. *See Campos Enter., Inc. v. Edwin K. Williams and Co.*, 964 P.2d 855 (N.M. App. 1998).

      **2.     General Jurisdiction**

Unlike specific jurisdiction, general jurisdiction subjects a defendant to a court's personal jurisdiction even when the controversy is not related to the defendant's activities in the forum. Because general jurisdiction is not related to the events giving rise to the suit, "courts impose a more stringent minimum contacts test. . . ." *OMI Holdings, Inc.*, 149 F.3d at 1091. The issue to be decided is whether the defendant has had "continuous and systematic general business contacts" with the forum such that the defendant could reasonably anticipate being haled into court in that forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1985). In assessing contacts with a forum, the Tenth Circuit has recognized such factors as

6

> (1) whether the corporation solicits business in the state through local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 457 (10th Cir. 1996) (quoting *Trierweiler v. Croxton*, 90 F.3d at1533).

Condit claims that Gannett's contacts with New Mexico are sufficient for this Court to exercise general jurisdiction. She bases this claim entirely on Gannett's sales of approximately 13,000 newspapers in New Mexico per day.[1] According to Condit "the issue before this Court is narrow: Do twelve to sixteen thousand copies of a national newspaper entering New Mexico each day for at least the past eight years constitute 'substantial, continuous and systematic' contacts with New Mexico sufficient to establish general jurisdiction?" Pls. Res. to Defs.' Suppl. Mem. at

---

[1]In her Supplemental Brief to Motion to Dismiss (April 8, 2004) (Doc. 51), Condit argued that additional newspapers published in New Mexico by Gannett's Texas-New Mexico Newspapers Partnership should also be considered part of Gannett's overall contacts with New Mexico. The evidence shows that the Texas-New Mexico Newspapers Partnership is a Delaware partnership between Gannett Texas LP and New Mexico-Texas MediaNews LLC, an affiliate of MediaNews Group. Gannett Texas LP is a limited partnership between Gannett Texas Publishing, Inc., Gannett El Paso Publishing, Inc., and Gannett Satellite Information Network, Inc. Gannett Texas Publishing, Inc. and Gannett El Paso Publishing, Inc. are wholly owned subsidiaries of Gannett Satellite Information Network, Inc. Gannett Satellite Information Network, Inc. is a wholly owned subsidiary of Gannett. *Id*. at Ex. 2, pg. 3.

There is a presumption that "'the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent.'" *Jemez Agency, Inc. v. Cigna Corp.*, 866 F.Supp. 1340, 1343 (D.N.M. 1994) (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983)). *Cf. Campos Enter., Inc. v. Edwin K. Williams and Co.*, 964 P.2d 855 (N.M. App. 1998) (franchisor must be connected to franchisee's act). This presumption may be overcome in two exceptional situations: (1) where the subsidiary is the "alter ego" of the parent corporation, or (2) where the Court may characterize the subsidiary as an agent. *Id*. Condit did not argue that either of these situations exist in the present matter. The Court, therefore, declines to consider the contacts between New Mexico and the Texas-New Mexico Newspapers Partnership as part of Gannett's contacts. *See Keeton v. Hustler Magazine*, 465 U.S. 770, 781 n. 13 (1984).

1 (April 26, 2004) (Doc. 54).  Although this is admittedly a close question, the Court answers this question in the negative.

As an initial matter, Condit claims that the Supreme Court case of *Keeton v. Hustler Magazine* governs this question.  465 U.S. 770 (1984).  Gannett disputes this claim, and argues that *Keeton* is inapplicable because it involved specific jurisdiction.  In *Keeton*, the plaintiff sued *Hustler* magazine for defamation.  As in the present matter, *Hustler* was a national publication targeted to a nationwide audience, yet with only a small percentage of its overall circulation aimed at the forum state (New Hampshire).  Nevertheless, the Court held that there was "no unfairness in calling it to answer for the contents of that publication wherever a substantial number of copies are regularly sold and distributed." *Keeton*, 465 U.S. at 781.

As has been noted, there are elements of both specific and general jurisdiction in the *Keeton* opinion.  *Wilson v. Belin*, 20 F.3d 644, 650 n. 5 (5th Cir. 1994).  However, a strong majority of courts that have looked at *Keeton* agree that it is a specific jurisdiction decision.  *See Glater v. Eli Lilly & Co.*, 744 F.2d 213, 216 (1st Cir. 1984) (finding that the *Keeton* standard for specific jurisdiction was inapplicable to an analysis of general jurisdiction); *Noonan v. Winston Co.*, 135 F.3d 85, 91 (1st Cir. 1998) (citing *Keeton* as supporting specific, as opposed to general, jurisdiction); *Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (1999) (same); *U.S. v. Consolidated Rail Corp.*, 674 F.Supp. 138 (D. Del. 1987) (same); *Saudi v. S/T Marine Atlantic*, 159 F.Supp.2d 469 (S.D. Tex. 2001) (same); *McDonough v. Fallon McElligott, Inc.*, 1996 WL 753991 (S.D. Cal. 1996) ("Plaintiff erroneously has used Supreme Court precedent finding specific jurisdiction to support his argument for general jurisdiction"); *but see Smith v. Turfway Park*, 1999 WL 33117268 (S.D. Ohio 1999)

(finding that *Keeton* supported a finding of general jurisdiction). This Court agrees. The basis for the *Keeton* decision was that the allegedly defamatory article was actually distributed in New Hampshire, and as noted, *Hustler* was being summoned to answer for "the contents of that publication." 465 U.S. at 781; *see also id.* at 774 (finding that it is "unquestionable that New Hampshire jurisdiction over a complaint *based on those contacts* would ordinarily satisfy the Due Process Clause"). Moreover, in *Keeton* the Court specifically recognized that Hustler's "activities in the forum may not be so substantial as to support jurisdiction over a cause of action unrelated to those activities." *Id*. at 779. In other words, the facts presented in *Keeton* supported specific jurisdiction, but would likely have been insufficient to support general jurisdiction. Indeed the Court cited *Keeton* for this proposition in the companion case *Calder v. Jones*. 465 U.S. 783, 788 (1984). Therefore, the Court does not agree with Condit that *Keeton* is controlling, and it will proceed with the analysis of Gannett's contacts and whether Gannett is "doing business" so as to establish minimum contacts in New Mexico.

When reviewing the "continuous and systematic" contacts test for general jurisdiction, courts have considered two common categories: contacts establishing a deliberate physical presence, and contacts consisting of purely economic activities. *See Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1077 (9th Cir. 2003). In the present matter, there is no evidence of a deliberate presence on the part of Gannett. Gannett has no physical facilities, employees, bank accounts, agents, registration, or incorporation in New Mexico. Thus, Condit's claim of general jurisdiction over Gannett must be based on its economic activities alone.

The "doing business" test originated as a pre-*International Shoe* method for measuring whether a corporation had sufficient "minimum contacts" to allow for the assertion of jurisdiction.

*Elliott v. Edwards Engineering Corp.*, 364 F.2d 991 (10th Cir. 1966); *Telephonic, Inc. v. Rosenblum*, 543 P.2d 825, 827 (N.M. 1975). "[A] foreign corporate defendant that is doing business in the forum state will be subject to the general jurisdiction of that state's courts and thus may be sued in that state on any cause of action, regardless of whether or not that cause of action arises from the defendant's contacts with the forum." Wright & Miller, *Federal Practice and Procedure*: *Civil 3d* § 1069.2 (2002). In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, *supra*, the Supreme Court found the Colombian defendant's contacts with Texas insufficient to support general jurisdiction even though the defendant had purchased approximately eighty percent of its helicopter fleet (worth over $4 million) and other related equipment from vendors in the forum state, sent personnel to the forum state for training, and sent an officer of the company to the forum for contract negotiations. 466 U.S. at 410-12. Like the defendant in *Helicopteros*, Gannett's contacts with New Mexico are solely economic in nature. The obvious difference, however, is that Gannett sold goods in the forum, as opposed to purchasing them. Although neither the Supreme Court nor the Tenth Circuit Court of Appeals has directly addressed this issue, courts that have considered similar contacts have been reluctant to find general jurisdiction based on sales alone.

For example, in *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 372-73 (5th Cir. 1987), the Fifth Circuit Court of Appeals reversed a district court's finding of general jurisdiction despite the fact that the defendant had $250 million in sales in the forum state over a five-year period through seventeen different dealers. The court found that the mere flow of products to the forum state did not constitute sufficiently substantial business contacts to satisfy the minimum contacts test. *Id*. at 375. *See also Noonan v. Winston Co.*, 135 F.3d 85, 93-94 (1st Cir. 1998) (sales totaling 26% of

10

company income insufficient for general jurisdiction); *Nichols v. G.D. Searle Co.*, 991 F.2d 1195, 1198 (4th Cir. 1993) (purchases and $13 million in sales insufficient for general jurisdiction); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 n. 3 (5th Cir. 1990) (sales totaling 12.9% of total income insufficient for general jurisdiction); *Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242 (9th Cir. 1984) (sales insufficient for general jurisdiction); *Harnischfeger v. Uniflo Conveyor, Inc.*, 883 F.Supp. 608, 612 (C.D. Utah 1995) (sales insufficient for general jurisdiction); *but see Solinger v. Nasco International, Inc.*, 655 F.Supp. 1385 (D.Vt. 1987) (finding mail order sales to a forum was sufficient for general jurisdiction).  More factually analogous is *Williams v. Wilson*, 939 F.Supp. 543, 549 (W.D. Tex. 1995), where the court was confronted with whether the circulation of Penthouse, a monthly magazine, to forum newstands and direct-mail subscribers was enough to confer general jurisdiction.  It found that "[i]njecting a 'stream of commerce,' even an 'enormous' stream, into a state through sales of products is insufficient in and of itself to support a finding of continuous and systematic contacts on which jurisdiction can be based." *Id*.  Thus, the circulation of magazines, without more, was "not of a continuous and systematic nature sufficient to invoke the general jurisdiction of a [forum] court." *Id*.; *see also Perna v. Dell Publ'g Co.*, 240 F.Supp.268, 269 (D. Mass. 1964).

      The Tenth Circuit has also demonstrated a reluctance to rest general jurisdiction solely on the sale of news materials in the forum, especially when such news materials caused no foreseeable consequences in the forum.  *See Walker v. Field Enter., Inc.*, 332 F.2d 632 (10th Cir. 1964); *Walker v. General Features Corp.*, 332 F.2d 583 (10th Cir.1963); *cf. Anselmi v. Denver Post Co.*, 552 F.2d 316 (10th Cir. 1977) (special jurisdiction upheld when potentially libelous story focused on forum residents).  In each of the *Walker* cases, the Tenth Circuit found a lack of

general jurisdiction where the news organization had no local property, agents or presence, and sent only limited, albeit far fewer, newspapers and features into the state. *See also Oklahoma Publishing Co. v. National Sportsman's Club, Inc.*, 323 F.Supp. 929 (W.D. Okla. 1971) (mailing of publications to Oklahoma residents did not constitute doing business within meaning of Oklahoma long-arm statute).

The Court is mindful that up to 16,000 daily newspapers circulated in New Mexico by Gannett sounds substantial. However, in the present case, the daily circulation of *USA Today* distributed in New Mexico is less than .6% of its total circulation. Thus, like many of the authorities cited above, Gannett's contacts with New Mexico amount to no more than the flow of a small fraction of its product into the state.[2] Therefore, such activity does not rise to the level necessary under the Due Process Clause to vest New Mexico courts with general jurisdiction over Gannett.

**B.     Reasonableness**

The second inquiry in the due process analysis is somewhat more methodical. It requires the Court to assess several components in determining whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Asahi Metal Ind. v. Superior Court*, 480 U.S. 102, 113 (1987). In considering whether the exercise of jurisdiction is so unreasonable as to violate "fair play and substantial justice" courts assess the following factors: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in

---

[2] Several courts have considered the percentage of a publisher's sales as a factor relevant to minimum contacts where, as here, the publication contains no libel of a resident and is the publisher's only contact with the forum. *See, e.g. Church of Scientology of California v. Adams*, 584 F.2d 893 (9th Cir. 1978); *Wolfson v. Houston Post Co.*, 441 F.2d 735 (5th Cir. 1971); *Ziegler v. Ring Pub. Corp.*, 558 F.Supp 329 (D.C. Fla. 1982).

receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *OMI Holidngs, Inc.*, 149 F.3d at 1095 (citing *Asahi*, 480 U.S. at 113)). Depending on the strength of the defendant's contacts with the forum state, the reasonableness component may have a greater or lesser effect on the outcome of the due process inquiry. *Id*. Applying this analytical framework, the Court also concludes that the exercise of personal jurisdiction over Gannett in New Mexico would violate due process.

### 1.  **Burden on the Defendant**

"While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction. This factor is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous." *Id.* at 1096. The burden on Gannett of litigating this claim in New Mexico in this case is significant. Gannett Co, Inc. and USA Today are Virginia corporations. While it is true that *USA Today* is a nationwide publication, none of Gannett's records or files are located anywhere near New Mexico, and since it is not a New Mexico story, none of the witnesses with information about the litigation are located here. This factor definitely weighs in favor of Gannett.

### 2.  **Interests of the Forum**

Condit argues that the New Mexico's interests in resolving this dispute are high because her reputation was damaged here and citizens of this state were misled. This argument fails, however, for one significant reason -- the allegedly defamatory article was never published in New Mexico. Rather, the acts that serve as the basis for this suit occurred outside of this state. No

13

New Mexico resident was injured or misinformed, and New Mexico has no significant interest in adjudicating this dispute. Again, this weighs against this Court's assertion of jurisdiction.

### 3. Plaintiff's Interest in Convenient and Effective Relief

In light of New Mexico's lack of connections to the suit and Condit's California residency, New Mexico would not seem to be a convenient forum for relief. Condit's interest in litigating in New Mexico appears to be a belief that this forum may offer a more generous statute of limitations.[3] Indeed, it is possible that New Mexico may be the only jurisdiction in which Condit's suit is not time-barred. Condit argues that this fact cuts in her favor because she lacks an alternative forum. However, "[t]he question of the applicability of [the forum state's] statute of limitations . . . presents itself in the course of litigation only after jurisdiction . . . is established. . . ." *Keeton*, 465 U.S. at 778-79. For this reason, the Second Circuit Court of Appeals found on similar facts that the relative statute of limitations of potential forums was not relevant to an analysis of the reasonableness of exercising jurisdiction. *See Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996)(citing *Keeton*); *Stanley v. CF-VH Asoc., Inc.*, 956 F.Supp. 55 (D. Mass 1997) (finding jurisdiction but dismissing action where statute of limitations had run in forums with most substantial interest). *Cf. Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033 (10th Cir. 1975) (ignoring statute of limitations issue in affirming district court dismissal of corporate parent under long arm service). Accordingly, the Court finds that this factor does not weigh in either party's favor.

---

[3]Condit brought a similar suit against *The National Enquirer* in California in February of 2002 based on a related article. *See Condit v. National Enquirer, Inc.*, 248 F.Supp.2d 945 (E.D. Cal 2002). A similar suit was not initiated against Gannett at that time, and the statute of limitations for libel in California has since run.

### 4. Efficient Administration of Justice

The fourth factor in the reasonableness inquiry is whether the forum state is the most efficient place to litigate the dispute. "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *OMI Holdings, Inc.*, 149 F.3d at 1097 (citations omitted). In this case, witnesses are located outside of New Mexico, the wrong underlying the lawsuit did not occur here, it is unclear what substantive law governs the case, and there is no danger of piecemeal litigation. Litigating this dispute in New Mexico would not be more efficient than in Virginia or California, and this factor weighs in Gannett's favor.

### 5. State's Interest in Furthering Fundamental Substantive Social Policies

This analysis "focuses on whether the exercise of personal jurisdiction by [New Mexico] affects the substantive social policy interests of other states or foreign nations." *Id*. This factor does not favor either party.

In sum, the lack of a connection between the State of New Mexico and this case is striking. Upon reviewing the reasonableness factors, the Court finds that Condit's interest in pursuing this action in New Mexico is so attenuated that the exercise of personal jurisdiction would violate "fair play and substantial justice," and violate the Defendants' right to due process.

### IV. CONCLUSION

For the reasons set forth above, the Court finds that the contacts between Gannett and New Mexico are insufficient to exercise personal jurisdiction, and that in any event, the exercise of jurisdiction would not be reasonable.

## V.  ORDER

**IT IS ORDERED** that Defendants' Motion to Dismiss be GRANTED on the grounds that this Court lacks personal jurisdiction over the Defendants.

**DATED** at Albuquerque this 3rd  day of August, 2004.

                                                     BRUCE D. BLACK
                                                     United States District Judge

**Attorneys:**

For Plaintiff:

    William H. Carpenter
    David J. Stout
    1600 University Blvd., NE, Suite A
    Albuquerque, NM  87102-1724

    James T. Ryan
    Johnson & Rishwain LLP
    12121 Wilshire Blvd., Suite 1201
    Los Angeles, CA  90025

For Defendants:

    Jim Dines
    Dines & Gross, P.C.
    6301 Indian School Rd. NE, Ste. 900
    Albuquerque, NM  87110

    Robert C. Bernius
    Leslie Paul Machado
    Nixon Peabody LLP
    401 Ninth Street, NW, Suite 900
    Washington DC  20004